0-3-6-0, people of the state of Illinois, a comment by J. Luke McNeil v. Jeffrey Wunderlich, a family by James Baker. Mr. McNeil. May I please report, counsel? I'm Luke McNeil. I work in the court district Springfield office. I'm a retired prosecutor with the state here. First I want to apologize to the court and to counsel for any inconvenience in the late rescheduling of the oral argument. And thank you for the flexibility. And plus, isn't it nice to argue a case in a nice courthouse? A little bit of character, a little bit of character, I'll give you that. Moving on to this case, the easiest way to show that reversal is required is the statutory interpretation issue. The defendant here was an off-duty sheriff's deputy who was allegedly called on to locate a missing person. On the way, he accidentally got into a wreck with a motorcycle and was then charged with a case of head-to-back offenses, failure to yield, turning left, driving in the wrong direction, and infringing lane usage. The defendant filed a pretrial motion to dismiss, arguing that section 11-205C4 gave him absolute and unqualified authority to disregard these subject statutes he was charged with violating. That statute, 11-205C4, provides that the driver of an authorized emergency vehicle, when responding to an emergency call, may disregard regulations governing the direction of movement or turn in a specified direction as a result of his involvement. The trial court agreed with the defendant that basically 205C4 was enough on its own to give any authorized emergency vehicle driver the unqualified and unlimited privilege to disregard these statutory privileges that are delineated in section 205C. However, the trial court completely failed to read the section as a whole, which is part of the rule of statutory construction. The subsection E, which the State raised to the Court's awareness, is that the foregoing provisions do not relieve the driver of an authorized vehicle from the duty of driving with due regard for the safety of all persons, nor do such provisions protect the driver from the consequences of his reckless disregard for the safety of others. In plain language, which is another part of the statutory rule, this is the best way to determine the legislator's intent. Clearly, the legislator intended that subsection E applies to all four of the privileges provided in subsection C. What was the evidence of reckless disregard? Besides the charging instrument, the hearing was basically de facto to establish that this was an emergency situation and that this was an authorized emergency vehicle driver. As soon as the trial court heard that, they agreed with the defendant that the condition is that this is an unqualified and unlimited provision. The State raised an argument that there has to be some reasonableness to this and pointed to subsection E of this statute. The trial court completely ignored it. Even to reject the State's position, the trial court's conclusion was that this was an authorized emergency vehicle driver. He was in an authorized emergency vehicle, and this was an emergency situation. Therefore, section 205c4 precluded him from being prosecuted. We're not saying the State's position that the record is pretty bare, as you all know. We're not saying that there may be some evidence of due regard or of the lack of reckless disregard of driving when it gets remanded. But there was nothing here that established that. And of the charging instruments, if they established anything or suggested anything that this was reckless disregard that resulted in an accident, the only conclusion to make based on the charging instruments is that there was obviously no due regard for the safety of the motorcycle driver. Is getting in a crash evidence of careless disregard? Maybe not, maybe so. The point is it's the defendant's burden to establish that the whole statutory section applies. The trial court can't ignore in context subsection E of this statute. You're down in Springfield. Maybe you don't know, but I just wonder. I'm 68 years old. I just wonder what's really going on here. Because obviously he can get sued, but for the charge of this police officer with this thing, I've never seen that in my life. Well, what would be the subsection E to not be meaningless? It would have to apply to something in this 205. I mean, the four exceptions are emergency vehicle may park or stand, proceed past the red signal and stop sign, exceed maximum speed limits, and then this one disregard regulations governing direction of movement or turning in specified direction. There's no reason, there's no logical reason, especially when looking at this statute as a whole. In fact, if we look at subsection E, it would be very meaningless to not apply it to all four of these subsections in C, which the trial court just completely failed to do. Even if I say they even rejected the state's argument that due regard was required, there would at least be something to latch on to. The trial court completely failed and completely ignored the due regard requirement and the reckless disregard of language in subsection E. I would also say that the plain language of the statute does not differentiate between a police officer or an ambulance driver or anything else. Just an authorized emergency vehicle driver is an authorized emergency vehicle driver. There's nothing that grants police officers immunity in section 205C or 205 as a whole. That's the strongest argument. The trial court here just completely made an error in the law. They didn't look at the whole statute, which is a cardinal rule of statutory construction, and if they had looked at the whole statute and at least made a ruling, then this wouldn't be a manifest error, which, of course, is just a no-brainer to interpret the statute. The point being that even under manifest error, even under that strong standard of review, this was clearly a reversible error by the trial court. What do you say he did look at the whole statute? Well, maybe he did or maybe he didn't. He either ignored it or didn't read it. And the state brought up, specifically brought up subsection E in the argument, and the trial court's literal conclusion was, well, I find that this is an emergency situation. He was an authorized emergency driver. Therefore, the motion is dismissed. The trial court didn't say, can I find it in that regard, or even that the state failed to show that he didn't read it or whatever. There's just nothing by the trial court that shows that they acknowledged the subsection, which is, in context, is a pretty important subsection. It's the only thing that keeps absurd results from happening with these provisions, with these privileges in subsection C. It's not hard to think of any number of absurd situations. But isn't the reverse also true, that it's almost absurd to think that you could violate any of the provisions of the vehicle code, even in an emergency situation, and still, you know, have due regard for the safety of others? I mean, it's almost a... I would say, I mean, I'm sure Your Honors have seen kind of the stoplight where a policeman or a fireman or an ambulance safely goes through a red light. That would be a situation if they used the privileges in subsection C without showing a lack of due regard for the safety of others. If they did show a lack of due regard, it would be to just completely floor it through the red light without checking for cross-trafficking. That would be the obvious violation of the subsection E, or at least not allowing this privilege in 205 to exist. And that's the clearest. There are other issues I've preserved in my brief for forfeiture purposes. But the strongest issue here, the clearest issue for reversible error, is that the trial court completely failed to acknowledge or ignore subsection E and made no finding on the record, one way or the other, that this driver practiced due regard for the safety of the other individuals around him. And if this Court has no more questions, I would ask to reverse the amendment. Okay. Thank you, Mr. McNeil. Mr. Fegerman? Thank you, Your Honor. Good afternoon. Please, the Court. Good afternoon, counsel. My name is James Fegerman. I represent Deputy Jeff Wunderlich. As you know from our brief, we've taken the position that the state's interpretation of 11205, particularly subsection E, is not correct. And we've taken the position consistently that this Court can reach that result by following the plain language of the statute. I do take issue with my opposing counsel's characterization of the trial court's decision, stating that the Court didn't consider subsection E. As he noted, the prosecutor who was present in court at the hearing on the motion to dismiss presented an argument around subsection E, yet the Court ruled against them. That doesn't mean the Court failed to consider that argument. I read that to mean that the Court implicitly rejected their interpretation of subsection E. And as I stated in my brief, at least the interpretation of subsection E has consistently been that subsection E speaks to the duty of care, that it preserved and not in any way changed or reduced by immediate privileges conferred by subsection C in the light of civil liability. You said E does what? I said E preserves the standard of care for civil liability. This statute pertains to police officers. It pertains to ambulance drivers and other first responders, some of whom will be government actors and some of whom may be private citizens. So in each civil case, which is why the case before this Court is not a civil case, you're going to have the interplay of the 12 immunity acts. What subsection E does is provide that nothing in 11205 relieves that officer of the duty to act with due regard for the safety of others, or relieves them of the consequences of his reckless disregard for the safety of others. In cases that have looked at this, our Supreme Court looked in Harris v. Thompson. In paragraph 21 of that opinion, the Harris Court stated, the emphasized portions of sections 11205 and 11907, which was also being reviewed by that Court, impose a duty on emergency vehicle drivers to refrain from negligence. It says nothing about criminal liability. And so the position that we took, and have taken throughout this case, is that subsection E simply speaks to the civil duty of care. As Justice Schmidt noted, there's probably going to be a lawsuit in this case. That's not before this Court at this time either. But that's what subsection E speaks to. Subsection C merely grants the emergency responders, such as the police officer in this case, the ability to disregard certain sections of the motor vehicle code when responding to an emergency situation. In this case, the trial court properly found that each of the violations alleged were violations that fell within the scope of C-4, and that they governed the direction of travel on the roadway or movement during turn. And since the officer was empowered by subsection C-4 of 11205 to disregard those sections, I believe the trial court properly found that the legislature had granted the officer immunity for prosecution for violations in those subsections, and therefore it was appropriate to grant the defendant's motion to dismiss. But, you know, we've seen a lot of statutes where the legislature doesn't have any difficulty saying this applies in a civil case. They didn't do that here. That is true. And, as I said, in my brief, I focus on you don't have to get past the plain language. But given that my opposing counsel says the plain language needs to be scored or should be scored to a diametrically opposed result, I think it might be prudent of me to look at some other tools of statutory dissection in terms of how we, in the event that this court finally decides to do it, how we resolve it. Because, unfortunately, in the legislative history of those systems, in this case, the legislative sessions that led to the enactment of this statute in 1977 were not recorded, there are no minute entries or any type of record of what the legislators were considering. And we do know that in Harris, which was decided in 2012, I believe, that was 2012, the Supreme Court of Illinois made a statement characterizing subsection 8 as the section that dealt with the duty to refrain from negligence. And since Harris, which the legislature is presumably aware of, there has been no clarification, no amendment of the statute from the legislature that would clarify that it was also intended to speak to criminal liability. But I realize it's not a perfect argument, because criminal liability wasn't before the court. If you look at the statute, in terms of some of the arguments the state has made, they claim that we're not giving effect to subsection. But I've explained in my brief how, by using subsection 8 to define a civil liability, it does, in fact, give effect to subsection 11205. And I think, conversely, if you adopt the state's interpretation and say that subsection E allows for criminal prosecution when there's a failure to, when someone's negligent or reckless, essentially, it eviscerates the immunity granted by subsection C. Because in other cases, essentially, where this type of violation is going to be enforced against a police officer, they're probably not writing the tickets for each other unless there's an accident or something. And so, essentially, we get to the situation where, in every case, the state can argue, well, there was an accident, so he must have been negligent, he must have been reckless, therefore, we're going to prosecute him. Well, the statute talks about recklessness, right? It does. Okay. And was he charged with reckless driving? He was not charged. And that's another thing. My opposing counsel indicated that the charging instruments provided some evidence of recklessness, and I vigorously dispute that. There is no mens rea for traffic offenses. There's strict liability offenses. And none of the three offenses allege reckless driving or reckless conduct of any kind. And that is an option 11-503 of the appeal code, as the offense of reckless driving. I assume the state's attorney up there knows how to charge somebody with reckless driving. I believe so, and it was prosecuted by the appellate prosecutor's office, and they did not. So there has not been an allegation of recklessness, nor any argument presented to the trial court. I actually raised the issue of forfeiture earlier. So is it your position that a police officer in an emergency situation has no obligation to have regard for the safety of anybody else on the road? I wouldn't say that. That is the argument, isn't it? It is in a criminal context. I think that it's fair to characterize my argument that a police officer responding to an emergency cannot be prosecuted for disregarding sections of the court of legal. But to go beyond that and say there are no consequences, well, they can be sued. And while there may be effects on their liability for the tort immunity act, they still wouldn't be angered to say they have no obligation to look out for the safety of others when they're responding to an emergency because if a police officer engages in involuntary violent conduct in a tort emergency, they're not going to be protected by the tort immunity act. But I think it's reasonable to conclude that the legislature intended to relieve officers responding to an emergency from the obligation to meticulously follow every aspect of the vehicle code and to remove the risk of criminal prosecution from officers in those situations. And I think it makes sense because really what value is it to criminally prosecute these officers? It doesn't do the victim any good, but the officer can pay a fine. It's not really something we're trying to deter. We want officers to respond quickly and efficiently to emergency situations, even if that means they have to go the wrong way on one way or run through a red light. Or just run into people because they're not looking? If they're truly not looking. Again, I would fall back on the fact that they can be sued for negligence. But again, I think that certainly a hard case to make for a bad law, and in this case I'm not going to dispute that the outcome is fragile. And certainly giving carte blanche to police officers to ignore the law. Well, I mean, traffic laws, one of the reasons they're not a ministry of crime or a strict liability is their safety rules. Ideally, moving violations are for the safety of everybody. So when you're violating a traffic law, you're presumably creating a safety hazard. And yet, the legislature here said you can't give an operator of an emergency vehicle to respond to an emergency a ticket for doing that unless they're reckless. It doesn't mean a guy can go through a blind intersection at 100 mile an hour against a red light in a busy area. That would certainly be reckless, and he'd be charged with that. All traffic laws, or at least moving violations, are for safety-related, right? I would agree. I think that I don't want to leave Justice McDade's question unanswered either. I think that the legislature did, you know, have to balance it. It's measuring the safety of, the safety risk inherent in violating these sections of the motor vehicle code, balancing that against the need to have first responders on the scene quickly and efficiently. And just by virtue of the fact that this statute provides that they may disregard these sections of the motor vehicle code, I think that it's reasonable to conclude that the legislature did not intend for there to be written tickets for every moving code violation that they might rack up on their motor vehicle. I'd like to address, again, with respect to statutory obstruction, if the court is looking beyond plain language, there's the rule of lenity. If we have two interpretations of the statute, one of which would not impose criminal liability, but the other of which would, the rule of lenity requires this court to strictly construe criminal statutes and take her on as a defendant. So while we have a statute here which does not, as I stated on three, create an absurd result, it does not leave any portion of the statute without effect, and it is consistent with the opinions of the courts of review that have analyzed this section, and does not impose criminal liability, versus the state's interpretation that clearly does, I believe the rule of lenity also would mandate interpreting subsection E to apply to not relieving the police officer in an emergency situation of their civil liability, but not authorizing their criminal prosecution, because that would then leave subsection C4 and the other subsections of subsection C without effect. Let me clear up another thing that we really haven't talked about. One of the issues the state raised was, gee, this copper wasn't responding to an emergency situation. Well, that's a question of fact, is it not? It is. And the trial judge obviously found that he was responding to an emergency situation, and the standard of review, our standard of review on that is manifestly the evidence, correct? That's what I asserted in my briefs, and to support that, I don't want to waste a lot of time delivering what I put in my brief, but this is a situation where the state is claiming this wasn't an emergency, but conveniently never defined what would constitute an emergency. Whereas Lieutenant Booker was the witness who testified, stated that an emergency is a situation that calls for an immediate law enforcement response. I consulted Webster's dictionary, Webster's in my brief, and I believe that when you have a situation that calls for an immediate response, and in this case it was a missing person from a mental health facility, that that does satisfy the definition of an emergency. I also wanted to speak quickly to the objection that was raised at the trial court. There was an objection raised when Lieutenant Booker testified that the person who called in the missing person indicated that this individual was suffering from schizophrenia and may have been dangerous, and that objection was sustained. I don't believe that that was offered for a heuristic purpose. It's not important to see the ultimate outcome of the truth of the matter, was this individual in fact schizophrenic or were they possibly dangerous, but rather it was offered to show the officers' understanding of the nature of the situation to which they were responding, was in fact urgent, was in fact an emergency. So I think that that, while the trial court's ultimate ruling granting the motion to dismiss was correct, I believe there was error to sustain that objection. I would ask the court to consider all the evidence held by the officers in evaluating whether or not this was truly an emergency. I suspect that it was and that it's reasonable to interpret the statute 11-205C and E as the trial court did. I believe the trial court did not commit error and did not fail to consider self-sanctioning. It simply did not adopt the interpretation that the state wanted. I believe it was appropriate to grant the motion to dismiss, and therefore I respectfully request that this court affirm the trial court. I have nothing further to add unless any of you have further questions. Thank you, Mr. Figerman. Mr. McNeil, some rebuttal. I would submit that recklessness, as we concentrate on the recklessness of language, Justice Smith, it also includes a duty to drive with due regard for the safety of all people. That's obviously not a recklessness standard only in section, subsection E of 205. The language in context shows that the court did not consider this. In other words, as Justice McNeil pointed out, this would be, as far as hard cases making good law or hard cases making bad law, this would be bad law because it would render section 205E completely meaningless. If it's not here for situations where there is not a practice of due regard for the safety of others, or there's evidence of recklessness or whatever, then what is it here for? On its face, driving the wrong way down a one-way street is not so much due regard for the safety of others, right? I would argue. But the legislature says the officers commune from getting a ticket for that. You're saying because there was an accident, so I mean, that's... I don't think anybody would drive the wrong way down a street. The record bears for us the facts of the duty of care here, or whatever you want to call it. The point being is that this same subsection has a limitation. It's not that the trial court implicitly held or explicitly held, and very dependent, that this is an unqualified, unlimited privilege to disregard direction of movement laws and direction of turning laws. That's just an erroneous reading of section 205 in context, in total. So if you're right, under what circumstances could a police officer not be charged? If they practiced due regard for the safety of others. Well, what if he has a near-miss and he doesn't hurt anybody, but he was just lucky? I can't imagine a circumstance where you couldn't charge a police officer with violating this, given the traffic tickets. You see, there are other remedies out there, more importantly, civil suits and things like that. Again, the defendant is putting a lot of faith into civil suits. Section 205 is in the vehicle code. I don't know why it's taken as gospel that this is applicable to civil matters. This is in the element of vehicle code, and the specific subsection itself talks about disregarding regulations governing direction of movement. That's clearly talking about the subject statutes here. Those are regulations governing direction of movement. It's not talking about liability or negligence or anything like that. It's using language that's common in Illinois vehicle code, in criminal statutes. Well, the state didn't charge this fellow with reckless driving, right? And there is a charge, reckless driving charge, in the vehicle code. Yes, reckless driving is a charge. Here, maybe they were planning on establishing that he had no due regard for the safety of others. The point is, this was the defendant's motion to dismiss. And the defendant presented in the trial court acknowledged zero evidence or even zero analysis or application, at least pointing out even to reject the fact that the defendant did drive with due regard for the safety of others. The point is, the record is completely bare here. And that is a reversible error and would lead to bad law because it renders subsection E meaningless. The legislature did not intend to add this limitation into subsection E without it applying to the foregoing provisions of that statute, which includes C-4. There's absolutely no logical reason that it would apply to C-1, 2, and 3 but not C-4 or anything like that. It clearly applies to subsection C-4 as well. As far as the rule of blame, I'll... Well, what's your best guess about what's going to happen if you go back and try this case in front of the judge? I would guess a motion to dismiss with... Well, no, I'm saying after hearing the evidence, not a motion to dismiss, but have a trial. How many of you think this is going to turn out? If there's evidence that showed he had to show due regard for the safety of others, if there's evidence of contributory negligence or the fault of the other person or whatever, then, I mean, there's too many variables to even make a hypothetical guess here. The record is, like I said, pretty bare. It was the defendant's burden to show not only that 205C-4 applied, but that 205E did not apply. As far as the rule of linen, I'd say that's obviously for ambiguous statutes. I'm sorry, I don't have it. What exactly did the charging instrument say? Charging instrument? Is it a statutory language? It charged by failure to yield to turning left at a certain intersection resulting in a collision with a motorcycle. I don't know. I don't think they named a specific victim in this one or another, but I think that each traffic offense included the language of the collision with the motorcycle. Did they include the language of failure to yield to a turn? No. That's a statutory exception. That's a statutory privilege. They were not—that's the defendant's burden to establish that 205 applies to him. And here, the trial court— I think under the law, if you know that there's an affirmative defense that applies, even if there's a plaintiff, if you know that there's an affirmative defense out there, you've got to plead past that in your first pleading. Well, I would say that these pleadings are sufficient. They state a cause of action. They state a violation of this action. Well, and that's my point. If that's sufficient, every time a police officer responding to an emergency gets involved in an accident, you can charge him with failure to yield right away or failure to signal, driving in the wrong lane, whatever, if you don't have to even plead that he shows lack of due care for the safety of others. You just plead the statutory traffic code violation. There is no circumstance where, it seems to me, you couldn't charge a police officer with a traffic violation, accident or no accident. And do you think that's what the legislature intended by this statute? I think they intended to put limits on it, which they did, in subsection E. There are limits to the privileges that you can disregard traffic laws if you're responding to an emergency. And that makes all the sense in the world. You can't completely disregard everyone around us just because we're responding to an emergency. So anecdotally, I drove a police car for nine years, and just because I could violate the traffic law didn't mean I thought it would be a good idea to go crash into people because I wanted to go home at the end of the shift and not to the hospital or to the morgue. So the argument that this incurs is perhaps to go out and crash into people. I don't think that argument was raised at the trial level or in any of the briefs. But I don't see why, yeah, as you said, I don't see why any privilege would encourage anyone to still want to get in an automobile crash. But yes, the plain language here, the rule of limiting doesn't apply because this is as plain language as it gets. The foregoing provisions do not relate the driver of an authorized emergency vehicle from the duty of driving with due regard to the safety of all persons. That was completely ignored in this case, and the trial court had a duty to at least address that on the record, and it failed to do so. And as far as the implicit holding by the trial court, I would submit that it talked about every other element. It talked about whether this was an authorized emergency vehicle, authorized emergency vehicle driver responding to an emergency. Why wouldn't they only leave this element out in making its findings? Clearly, the trial court failed to acknowledge it or ignore it. Either way, it's reversible error. If there are no more questions, I can close the court. Okay. Well, thank you, Mr. McNeil. Thank you both for your arguments here today. This matter will be taken under advisement. The resolution will be issued in due course.